No. 21-55827

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CARL HAYNES,

*Appellant*

v.

HOME DEPOT U.S.A. INC.

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

CASE NO. 15-cv-01038-CAB-JLB

**ANSWERING BRIEF OF APPELLEE
HOME DEPOT U.S.A., INC.**

MORGAN, LEWIS & BOCKIUS LLP
Barbara J. Miller
John D. Hayashi
David J. Rashe
600 Anton Blvd., Suite 1800
Costa Mesa, CA 92626
Telephone: 714.830.0600
Facsimile: 714.830.0700
barbara.miller@morganlewis.com
john.hayashi@morganlewis.com
david.rashe@morganlewis.com

*Attorneys for Appellee*
HOME DEPOT U.S.A., INC.

## CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for Home Depot U.S.A., Inc. represents that Home Depot U.S.A., Inc. is a wholly owned subsidiary of The Home Depot, Inc., a publicly traded company listed on the NYSE under the symbol HD. No publicly held company owns ten percent or more of The Home Depot, Inc.'s stock.

Dated: July 14, 2022

Respectfully submitted,

MORGAN LEWIS & BOCKIUS

 */s/ Barbara J. Miller*
Barbara J. Miller

Attorneys for Appellee
Home Depot U.S.A., Inc.

1

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ 1

INTRODUCTION ................................................................................................... 6

STATEMENT OF ISSUES .................................................................................... 7

SUMMARY OF ARGUMENT .............................................................................. 8

STATEMENT OF THE CASE ............................................................................. 11

    A. Introduction ............................................................................................... 11

    B.  Procedural History Leading to the Prior Appeal and Remand ................... 12

    C. Pretrial Proceedings .................................................................................. 13

    D. Trial Evidence ........................................................................................... 16

    E. The Jury Instructions ................................................................................. 32

    F. The Verdict ................................................................................................ 34

    G. Post-Trial Motions .................................................................................... 35

STANDARD OF REVIEW .................................................................................. 35

ARGUMENT ........................................................................................................ 37

    I. THIS APPEAL IS LIMITED TO MATTERS IN THE TRIAL
    RECORD; ALL OTHER ITEMS SHOULD BE STRICKEN .......................... 37

    II. THE TRIAL COURT'S EVIDENTIARY RULINGS PROVIDE
    NO BASIS FOR REVERSAL ......................................................................... 38

        A. The In Limine Rulings at Issue Were Tentative and Excluded
        Nothing; They Provide No Basis for Reversal ............................................ 38

        B. The District Court Properly Sustained Home Depot's
        Objection to a Single Question Posed to Michael Kull ................................ 42

        C. Korkow's Testimony Provides No Basis for Reversal ............................ 44

        D. Admission of Exhibit 625 Provides Not Basis for Reversal .................... 48

i

E. There Was No Erroneous Exclusion of "Fabricated Write-ups" .................................................................................................50

III. THE JURY WAS PROPERLY INSTRUCTED; HAYNES HAS NOT DEMONSTRATED ANY BASIS FOR REVERSAL.............................53

    A. Home Depot Did Not "Forfeit" Either Its Statute of Limitations Defense to Haynes' Wrongful Termination Claim or Its Claim that Haynes Failed to Exhaust Administrative Remedies........................................................................................54

    B. The District Court's Instructions Properly Guided the Jury on Delayed Discovery In Conformity with California Supreme Court Precedent ..........................................................................57

    C. The Delayed Discovery Instructions Were Not Prejudicial.....................59

IV. THE VERDICT IS CONSISTENT .............................................................61

V. THE DISTRICT COURT ACTED WELL WITHIN ITS BROAD DISCRETION IN SETTING TRIAL TIME LIMITS........................62

    A. Haynes Forfeited Any Objection .............................................................62

    B. District Courts Have Broad Discretion to Impose Reasonable Trial Time Limits........................................................................63

    C. Haynes Squandered the Time He Was Given ..........................................64

VI. THE DISTRICT COURT DID NOT ERR BY SUMMARILY ADJUDICATING THE ISSUE OF PUNITIVE DAMAGES ..........................67

CONCLUSION....................................................................................................69

CERTIFICATE OF SERVICE .............................................................................70

CERTIFICATE OF COMPLIANCE....................................................................71

NINTH CIRCUIT RULE 28-2.6 STATEMENT ..................................................72

ADDENDUM OF STATUTES AND RULES.......................................................1

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) ..............................................59

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
  289 F.3d 589 (9th Cir. 2002) ...............................................37

*Clem v. Lomeli*,
  566 F.3d 1177 (9th Cir. 2009) .............................................53

*Cruz v. HomeBase*,
  83 Cal. App. 4th 160 (2000) ...............................................68

*Defs. of Wildlife v. Bernal*,
  204 F.3d 920 (9th Cir. 2000) ...............................................35

*Donovan v. Burger King Corp.*,
  672 F.2d 221 (1st Cir. 1982)................................................63

*Down v. Los Angeles Unified Sch. Dist.*,
  228 F.3d 1003 (9th Cir. 2000) .............................................68

*Flores v. City of Westminster*,
  873 F.3d 739 (9th Cir. 2017) ...............................................61

*Fox v. Ethicon Endo-Surgery, Inc.*,
  34 Cal. 4th 797 (2005) .......................................................58

*Gen. Signal Corp. v. MCI Telecommunications Corp.*,
  66 F.3d 1500 (9th Cir. 1995) .................................36, 63, 65

*Greisen v. Hanken*,
  925 F.3d 1097 (9th Cir. 2019) .............................................36

*Haynes v. Home Depot USA, Inc.*,
  800 F. App'x 480 (9th Cir. Jan. 22, 2020)...................13, 51, 52, 59

*Home Indem. Co. v. Lane Powell Moss and Miller*,
  43 F.3d 1322 (9th Cir. 1995) ...............................................61

i

*Hudson v. Wylie*,
242 F.2d 435 (9th Cir. 1957) *cert denied*, 355 U.S. 828 (1957) .......................49

*Johnson v. Lucent Tech. Inc.*,
653 F.3d 1000 (9th Cir. 2011) ...........................................................................54

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ........................................................................................58

*Katz v. Regents of the University of California*,
229 F. 3d 831 (9th Cir. 2000) .............................................................................43

*Kelly v. City of Oakland*,
198 F.3d 779 (9th Cir. 1999) ...............................................................................49

*Kirshner v. Uniden Corp. of America*,
842 F.2d 1074 (9th Cir. 1988) ............................................................................37

*Liew v. Official Receiver and Liquidator (Hong Kong)*,
685 F.2d 1192 (9th Cir. 1982) ............................................................................38

*Lowry v. Barnhart*,
329 F.3d 1019 (9th Cir. 2003) ............................................................................37

*McEuin v. Crown Equip. Corp.*,
328 F. 3d 1028 (9th Cir. 2003) ...........................................................................44

*McKnight v. General Motors Corporation*,
908 F.2d 104 (7th Cir. 1900), *superseded by statute on other
grounds*, *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir.
2007) .....................................................................................................................64

*Mendoza v. Home Depot, U.S.A. Inc.*,
No. 09-CV-05843-SJO-JCx, 2010 WL 424679 (C.D. Cal. Jan. 21,
2010) .....................................................................................................................41

*Miller v. Bechtel Corp.*,
33 Cal. 3d 868 (1983) ..........................................................................................58

*Monotype Corp. PLC v. Int'l Typeface Corp.*,
43 F.3d 443 (9th Cir. 1994) ....................................................................35, 62, 63

*Moser v. Las Vegas Metro. Police Dep't*,
  984 F.3d 900 (9th Cir. 2021) ...............................................................36

*Navellier v. Sletten*,
  262 F.3d 923 (9th Cir. 2001) ...............................................................63

*Obrey v. Johnson*,
  400 F.3d 691 (9th Cir. 2005) ...............................................................36

*Omar v. Sea-Land Serv., Inc.*,
  813 F.2d 986 (9th Cir. 1987) ...............................................................61

*Pollock v. Tri-Modal Dist. Servs., Inc.*,
  11 Cal. 5th 918 (2021) ......................................................................57

*Roby v. McKesson Corp.*,
  47 Cal. 4th 686 (2009) ......................................................................68

*Romano v. Rockwell Int'l, Inc.*,
  14 Cal. 4th 479 (1996) ......................................................................54

*Sec'y of Labor v. DeSisto*,
  929 F.2d 789 (1st Cir. 1991)................................................................64

*Shad v. Dean Witter Reynolds, Inc.*,
  799 F.2d 525 (9th Cir. 1986) ...............................................................63

*Sovak v. Chugai Pharm. Co.*,
  280 F.3d 1266 (9th Cir. 2002) .............................................................48

*Spinks v. Equity Residential Briarwood Apartments*,
  171 Cal. App. 4th 1004 (2009) ......................................................68, 69

*Sprint/United Mgmt. Co. v. Mendelsohn*,
  552 U.S. 379 (2008).........................................................................43

*Tennison v. Circus Enters., Inc.*,
  244 F.3d 684 (9th Cir. 2001) ...............................................................38

*Tritchler v. Cty. Of Lake*,
  358 F.3d 1150 (9th Cir. 2004) .............................................................53

iii

*U.S. v. Espinoza-Baza*,
647 F.3d 1182 (9th Cir. 2011) ............................................................. 38

*U.S. v. Lui*,
941 F.2d 844 (9th Cir. 1991) .............................................................. 38

*U.S. v. Reyes-Alvarado*,
963 F.2d 1184 (9th Cir. 1992) ............................................................ 48

*United States v. Dixon*,
201 F.3d 1223 (9th Cir. 2000) ............................................................ 53

*United States v. Reaves*,
636 F. Supp. 1575 (E.D. Ky. 1986) ............................................... 63, 64

*Vaughan v. Ricketts*,
950 F.2d 1464 1471 (9th Cir. 1991) ................................................... 62

*Williams v. City of Belvedere*,
72 Cal. App. 4th 84 (1999) ................................................................ 57

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ............................................................ 61

*Zhang v. Am. Gem Seafoods, Inc.*,
339 F.3d 1020 (9th Cir. 2003) ............................................................ 62

## Statutes

28 U.S.C. § 1291 .................................................................................. 7

28 U.S.C. § 1332(a) and § 1441 ........................................................... 7

28 U.S.C. § 2111 ................................................................................ 36

Cal. Civ. Code § 3294(b) ................................................................... 67

Cal. Code. Civ. Proc. § 335.1 ............................................................ 54

Cal. Gov't Code § 12960(d)(1) ............................................... 54, 57, 59

## Other Authorities

Assembly Bill 9 .................................................................................. 55

iv

Fed. R. of App. Proc. 10(a) ........................................................37

Fed. R. of Civ. Pro. 49 .......................................................32, 56

Fed. R. Evid. § 103 ......................................................49, 38, 43

Fed. R. Evid. § 106 ...............................................................14

Fed. R. Evid. § 402 ...............................................................41

Fed. R. Evid. § 403 ........................................................38, 42

Fed. R. Evid. § 602 ........................................................40, 41

Fed. R. Evid. § 803(6) .....................................................44, 45

Fed. R. Evid. § 1006 .............................................................50

## INTRODUCTION

After a week-long trial with testimony from twelve witnesses, the jury unanimously found that Appellant Carl Haynes ("Haynes") failed to prove that Appellee Home Depot U.S.A., Inc. ("Home Depot") unlawfully terminated him due to his age or failed to pay him overtime. The jurors further found that Haynes failed to timely assert his claims. These findings are supported by substantial evidence, including that Haynes' poor work performance caused his termination.

Haynes asks this Court to upset the verdict based on meritless arguments, "evidence" never presented to the jury, and objections never asserted or preserved for appeal. Such efforts must be disregarded. This Court considers the actual trial record, not what Haynes could have done differently. The district court did not abuse its discretion as to any of its evidentiary rulings, and Haynes has not shown prejudice. The district court's case management rulings were also proper exercises of discretion that did not prejudice Haynes.

With respect to Haynes' age discrimination claim under the California Fair Employment and Housing Act ("FEHA"), Haynes failed to introduce any evidence that he timely exhausted his administrative remedies, barring his claim entirely, and the jury agreed. Regardless, any error in that verdict was

harmless, because the jury also found that Haynes' age was not a substantial factor motivating his discharge.

The judgment should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and § 1441 as an action removed from the California Superior Court. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    The district court's rulings on Home Depot's motions in limine did not constitute an abuse of discretion and did not prejudice Haynes. The district court made no definitive ruling excluding any witness or evidence.

2.     The district court properly overruled Haynes' hearsay objection to witness Courtney Korkow's ("Korkow") trial testimony concerning demographic information about Assistant Store Managers ("ASM") whose employment terminated during the relevant time. Moreover, Haynes has not shown how the admission of this demographic information caused prejudice warranting reversal.

3.    The district court did not err by admitting the business records that Korkow relied on in her testimony (Exhibit 625). Haynes invited the district court to admit the exhibit, did not object when it was admitted, and

then examined witnesses using the exhibit. Haynes forfeited any objection to this exhibit. Finally, Haynes makes no showing that admission of the exhibit caused prejudice warranting reversal.

4.    The jury instructions and special verdict forms were not erroneous, and Haynes does not show that they were prejudicial.

5.    The verdict was not inconsistent, and Haynes forfeited any claim of error by failing to object before the jury was released.

6.    The district court did not abuse its discretion in limiting the trial to 12 hours per side, and Haynes forfeited this issue by failing to either object or request more time.

7.    The district court did not err in granting Home Depot's motion for summary judgment on the issue of punitive damages. Moreover, the issue is moot because Haynes lost his claims at trial.

## SUMMARY OF ARGUMENT

Haynes improperly includes matters in his Excerpt of Record that were not filed with the district court or presented during trial. Those matters should be stricken as they are not properly part of the record in this appeal.

The district court did not abuse its discretion with any of its evidentiary rulings. First, the district court's motion in limine rulings were tentative and excluded nothing; they cannot form the basis Haynes' appeal. Next, the

district court properly permitted Korkow to testify from her personal knowledge of Home Depot's Tesseract[1] database over Haynes' hearsay objection. Korkow's testimony was based on her personal knowledge of business records that qualified for the business records exception to the hearsay rule. Moreover, Haynes offers no evidence that the testimony was untrue or unreliable. Haynes has not shown any prejudice from Korkow's testimony regarding ASM demographics.

In a futile effort to undermine Korkow's testimony, Haynes requested the underlying demographics data that Korkow reviewed for her testimony, which he received. He then proceeded to ask the district court to make it an exhibit (Trial Exhibit 625), never objected its admission into evidence, thanked the district court for entering it in evidence, and then used Exhibit 625 extensively in his presentation of evidence. Not only did Korkow's testimony establish a proper basis for the business records exception to the hearsay rule (an objection never made), Haynes invited admission of the evidence and did not object. He preserved no issue relating to Exhibit 625 for appeal; he cannot now challenge this Exhibit.

---

[1] "Tesseract" is misspelled in the transcripts as "Tezzaarac" and "Tezzarac."

The district court properly instructed the jury on California law regarding delayed discovery for statute of limitations purposes in accordance with California Supreme Court decisions. Home Depot thoroughly preserved its statute of limitations and exhaustion defenses. Haynes failed to show prejudice from the district court's instructions because he did not introduce evidence that would support his delayed discovery theory regardless of the instruction language. Haynes needed to prove that he had no knowledge of a potential age discrimination claim until more than 12 months after his termination, and the record contains not a scintilla of such evidence. In addition, the jury found that Haynes did not prove his age was a substantial motivating factor in the termination of his employment, rendering the limitations issues unnecessary.

The district court did not accept an inconsistent verdict. The jury's verdict that Haynes' age discrimination and wrongful termination claims were untimely because he had notice of circumstances to put a reasonable person on inquiry to seek to learn the facts necessary to bring an age discrimination claim and/or that he learned no new facts after February 12, 2014 (one year after his termination) is internally consistent with the jury's verdict that Haynes failed to prove that his age was a substantial motivating factor in the termination of

his employment. Moreover, Haynes failed to preserve this issue for appeal by failing to object to the verdict before the jury was discharged.

The district court did not abuse its discretion in limiting each side to twelve hours of trial time. Regardless, Haynes did not preserve this issue for appeal. He did not object to the time limit or request additional time. Moreover, the district court gave Haynes additional time to present his closing argument even though Haynes squandered his trial time and repeatedly ignored the district court's time-related warnings.

Finally, the district court properly granted Home Depot's motion for summary adjudication of Haynes' claim for punitive damages. The district court properly exercised its broad discretion to permit Home Depot's filing of a dispositive motion on the punitive damages issue. Haynes forfeited any challenge by not objecting to it. Moreover, the district court properly concluded that no triable issue existed on the issue; Haynes could not prevail as a matter of law because undisputed evidence established that the individuals who terminated Haynes (Collins and Grooms) are not managing agents.

## STATEMENT OF THE CASE

### A.    Introduction

Despite numerous opportunities to improve his poor job performance and attitude, Home Depot discharged Haynes, a former salaried Assistant Store

11

Manager ("ASM") at Home Depot's Santee, California retail home improvement store. Haynes claimed age motivated his discharge and that he should have been paid overtime like the hourly employees he managed. A jury unanimously ruled against him, finding Haynes age was not a substantial motivating factor in the termination decision and that Home Depot properly classified him as an exempt manager. 5-ER-955, 959; 16-ER-3640-42.

## B. Procedural History Leading to the Prior Appeal and Remand

On February 13, 2015, Haynes filed this case alleging causes of action including breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, unpaid overtime, wrongful termination, retaliation, failure to prevent discrimination and retaliation in violation of FEHA, age discrimination, negligent and intentional infliction of emotional distress, and punitive damages. HDSER-4-30[2]; 11-ER-2504-42. Home Depot answered Haynes' original complaint on May 8, 2015, and his operative first amended complaint on June 10, 2015, asserting that it had legitimate reasons for Haynes' termination (poor performance), the statute of limitations barred his claims, Haynes failed to

---

[2] Haynes improperly filed "Supplemental Excerpts of Record" with the Court. 9th Cir. Dkt. No. 17. To avoid confusion, Home Depot refers to its Supplemental Excerpts of Record as "HDSER."

exhaust administrative remedies, and Haynes was properly classified as exempt from overtime. HDSER-32-39; 11-ER-2479-2503.

Home Depot moved for, and the district court granted, summary judgement on all causes of action.[3] On appeal, this Court affirmed as to most issues, but reversed as to the age discrimination, wrongful termination, and overtime claims based on disputed facts. 11-ER-2464-78, *Haynes v. Home Depot USA, Inc.*, 800 F. App'x 480 (9th Cir. Jan. 22, 2020). On remand, Home Depot renewed, and the district court granted, its motion for summary judgment on punitive damages. 1-ER-8-18; 10-ER-2331-56.

### C. Pretrial Proceedings

On February 11, 2021, the parties submitted a joint proposed Pretrial Order ("PTO"). 19-ER-4275-4323. Haynes proposed 26 trial witness, including human resources personnel Courtney Korkow and Lisa Ference. *Id*. Due to witness availability concerns, Home Depot sought to amend the proposed Pretrial Order to add Lisa Ference and Courtney Korkow to its witness list. After receiving no response from Haynes' counsel, Home Depot

---

[3] Because the district court dismissed all causes of action, it did not specifically rule on Home Depot's motion to dismiss punitive damages.

emailed a proposed amended Pretrial Order on March 8, 2021. 19-ER-4225-74.[4]

Home Depot filed ten motions in limine; Haynes filed none. On March 11, 2021, the district court held a pretrial conference and decided motions in limine. With respect to those at issue in Haynes' appeal—Motion in Limine 1 ("MIL 1"), Motion in Limine 2 ("MIL 2"), and Motion in Limine 3 ("MIL 3")—the district court either did not rule at all or made no definitive ruling, leaving a final ruling to trial. 8-ER-1617:4-1627:13; 9-ER-1882-1901.

At the conference, Haynes asked for and the district court granted permission to depose Korkow.[5] Haynes did not move to exclude her on any basis. 8-ER-1653:16-1654:24, 1656:10-1657:25. Haynes made no objection

---

[4] Home Depot's submission included "a version showing track changes" and noted that "No changes were made to Plaintiff's section." 19-ER-4225. The track changes version showed the proposed edits over the version submitted and signed by counsel on February 11. HDSER-40-89. When Haynes' counsel objected to this submission, Home Depot's counsel immediately informed the court via email that "Our submission this morning included the '/s/' blocks dated Feb. 11, 2021 that were contained in the original submission on February 11, 2021. At Plaintiff's counsel's request, we have removed the '/s/' block for Plaintiff's counsel from the attached revised submissions, as counsel has indicated they do not give permission to include it." 2-ER-218. When Haynes later raised this issue, the court responded, "I understood they withdrew that. I got an e-mail about that." 8-ER-1617:22-23. Because Haynes did not include the track changes version in his Excerpts, Home Depot can introduce this document pursuant to the "rule of completeness" in Federal Rule of Evidence 106.

[5] Haynes deposed Korkow on May 11, 2021.

14

to Korkow in his final Amended Objections to Home Depot Witnesses and Trial Exhibits.  7-ER-1546, *et seq*.

On March 15, 2021, the district court entered the final Pretrial Order.  8-ER-1567-1613.  It states that "Home Depot reserves the right to assert the following defenses if the need arises:  Statute of Limitations (2nd Defense); Failure to Exhaust (3rd Defense) . . ."  8-ER-1573:3-20.  Stipulated facts included:  "At the time of his termination, Plaintiff's annual salary was $76,904" and "Home Depot terminated Mr. Haynes on February 12, 2013."  8-ER-1609-10; *see also* 7-ER-1559.

Prior to the start of trial, on July 19, 2021, Home Depot filed its trial brief with sections titled "Haynes' Wrongful Termination Claim is Time Barred" and "Haynes Failed to Timely Exhaust His Administrative Remedy Rendering His FEHA Claim Untimely."  7-ER-1345-84.  Haynes responded to the limitations issues in his own trial brief filed later that day.  7-ER-1332-44.

The district court scheduled a five-day jury trial and reasonable time limits of 12 hours per side.  8-ER-1613.   Haynes did not object or ever request additional time.  During trial, the district court repeatedly reminded Haynes of his remaining time. 12-ER-2715; 13-ER-2992; 14-ER-3266; 15-ER-3521. Haynes' counsel rebuffed these warnings, responding on one occasion, "I have it out to the tenths of a second where I'm going, but I appreciate you helping

15

me with that." 13-ER-2970. At the end of the fourth day of trial, the district court *sua sponte* granted Haynes additional time and shortened Home Depot's time so both sides would have equal time for closing arguments. 3-ER-565-66; 15-ER-3521.

### D. Trial Evidence

Haynes began working for Home Depot in February 1987. In October 2003, Haynes started as an ASM for Home Depot's Santee store in District 199. 8-ER-1609-10.

#### 1. Jeff Grooms' Testimony

From the end of March 2011 through 2014, Jeff Grooms ("Grooms") was district manager ("DM") for eleven stores in District 199, including the Santee store. 15-ER-3483:8-11, 3484:1-10; 12-ER-17-2669:4. During that time, Chris Collins ("Collins") was the Store Manager ("SM") at Santee. 15-ER-3484:11-13. As DM, Grooms directly managed the SMs in District 199; each SM directly managed ASMs; and each ASM managed Department Supervisors, who in turn managed teams of hourly associates. 15-ER-3485:9-18, 3519:3-7.

Prior to taking on the role in District 199, Grooms worked as a DM in the Palm Springs region. Grooms explained that the Great Recession period of 2008-2010 required significant changes to store operations. 15-ER-3487:17-

16

3492:7. These changes included revolutionary new technology like the "First Phone," a handheld device store associates could use for a broad array of responsibilities. *Id.* Home Depot also implemented the "Big Three": (1) a focus on ensuring product was on the shelves ("in-stock"), (2) providing excellent customer service, and (3) a focus on store appearance and merchandising. 15-ER-3491:3-3495:18.

Haynes struggled with technology and the Big Three. On several Santee store walks, Grooms observed significant out-of-stock problems in Haynes' departments. 15-ER-3473:13-24. For example, during a visit in August of 2012, "[Haynes] had hundreds of out-of-stocks in his departments" including "Power tools, hand tools, fasteners, you name it." 15-ER-3473:21-3474:2.

Haynes was discussed at talent planning meetings (also called "Roundtables") because he struggled with performance, and he was one of the poorest performing ASMs in District 199. 15-ER-3503:6-19. Haynes' departments showed consistent problems with being in stock, and his Department Supervisors were not getting the feedback and coaching they needed. 15-ER-3504:8-20.

Haynes' ongoing performance issues led Collins to recommend termination, and Grooms approved it. 15-ER-3508:19-3511:5. Age, tenure, and salary played no role in the decision. *Id.* Grooms never considered

17

reducing manager salaries as a means of improving operating profit, which would not make any sense because "high performing assistant managers are invaluable" by driving sales and training, getting ahead of sales trends, ordering product right away, mentoring, and reducing the workload for the SM. 15-ER-3499:2-25. Grooms never heard anyone at Home Depot suggest that anyone should target folks who had been with Home Depot longer, and he never made such a suggestion or held such a belief. 15-ER-3501:23-3502:14. He never suggested or believed higher paid managers should be eliminated. *Id.*

### 2. Chris Collins

Collins became the SM in Santee in June 2010, and directly managed Haynes. 13-ER-2829:25-2830:4; 12-ER-12-16. Collins wanted Haynes to succeed; he spent time with Haynes providing coaching and training to help him improve his performance. 13-ER-2761:16-2762:4.

Collins first started formally counseling Haynes for failing to perform a management inspection (pro-desk walk) that was expected of him. 13-ER-2762:5-15; 14-ER-3036:23-3040:15. On June 29, 2011, Haynes received written discipline because a Department Supervisor who reported to him, and whom Haynes was responsible for training, did not understand applicable procedures for preventing theft in the hardware department. 14-ER-3042:5-

3043:19; 18-ER-3950 (Ex. 502). Haynes did not learn how to use the new First Phone technology, and could not even use it himself, much less train his subordinates; he received a written disciplinary notice for this problem. 13-ER-2783:25-2784:13, 2809:13-23; 14-ER-3045:21-3047:10; 18-ER-3951 (Ex 503). Haynes had "in stock" problems—he did not keep his department shelves stocked even when the store had products for the shelves, which resulted in loss of sales, and he ultimately received a disciplinary notice for this problem on August 30, 2012. 13-ER-2790:10-2791:1, 2839:5-2843:2; 14-ER-3066:14-3067:21; 18-ER-3954 (Ex. 506). Haynes did not keep his departments organized and tidy as required by the Big Three. 13-ER-2791:25-2792:17. Haynes did not provide the associates who worked in his departments with the training they needed, and he was not following up on coaching and performance improvement plans for his associates as expected. 13-ER-2804:18-2806:3; 14-ER-3042:5-3044:15; 3067:22-3068:21; 18-ER-3954 (Ex 506).

In September of 2011, Haynes failed to comply with a policy that required ASMs to personally watch disposal of product identified as worthless (called a "zero markdown" or "ZMA"). 14-ER-3013:2-3015:8. Haynes signed off that he had personally witnessed such disposals, but video review showed that he had not actually done this on at least 16 occasions. 13-ER-2814:1-

2815:6; 2817:5-20. He received a final written warning for his false certifications. 14-ER-3048:14-3052:23; 18-ER-3952 (Ex. 504). After the ZMA violations, on June 4, 2012, Haynes failed to complete and submit the store readiness checklist verifying that the store was safe for the public. 14-ER-3061:3-3065:11; 18-ER-3953 (Ex 505). Completion of this safety inspection was so important that any manager who failed to complete and submit the information received a disciplinary notice. 14-ER-3065:9-11.

In August of 2012, Collins provided written feedback on performance deficiencies (18-ER-3954, Ex. 506) and asked Haynes to submit a written plan to address the problems, but Haynes refused to provide the requested plan. 14-ER-3068:19-24 ("He basically just blew me off"). On September 9, 2012, having not provided a written plan for improvement, Haynes *again* failed to submit the store readiness checklist. 14-ER-3069:1-3070:21; 18-ER-3955 (Ex. 507). In December, during a walk with Grooms, the hardware department again had out of stocks. 14-ER-3072:8-3073:3.

In January of 2013, Collins asked Haynes to take care of a situation relating to a display. He did not do so for days. "[I]t just kept adding up, and I was like look, he just doesn't want to listen to me anymore, he is obviously not respecting me, he is undermining my position as store manager, and I really need to move forward and let him go." 14-ER-3073:10-22. Collins decided to

20

terminate Haynes because Collins, "wanted [Haynes] to be better than what he was or was willing to do, and ultimately I couldn't continue to have him on my team and expect to be successful." 14-ER-3073:4-9. Collins never heard anything from Grooms giving the impression that folks who were older or longer tenured should be pushed out. 14-ER-3077:23-3079:6. Age played no role in Collins' decision-making process. 14-ER-3079:7-10. Haynes' salary played no role. 14-ER-3079:18-19.

Haynes does not challenge the jury's overtime decision, thus a summary of Collins' extensive testimony regarding exemption issues is unnecessary. Collins testified extensively to Haynes' management role, including that Haynes devoted at least 70% of his time to management responsibilities,[6] "but not with a hundred percent effort." 14-ER-3018:5-8.

### 3. Courtney Korkow

Haynes' first witness was Korkow. 12-ER-2623:12-13. At the time of Haynes' termination, Korkow was a district HR manager, but not for the

---

[6] These duties were interviewing, selecting, training, coaching, providing feedback, dealing—making recommendations on rates of pay, dealing with hours of work, sending employees home, having them come in, directing work, maintaining work records, creating work lists, appraising productivity, handling complaints, handling customer complaints, handling employee problems and complaints and concerns, providing employee discipline and providing employee counseling, planning work apportioning work among employees, providing for the safety of the employees. 14-ER-3017:15-3018:4

district where Haynes worked, so she knew nothing about the circumstances of his termination.  12-ER-2633:2-9.  *In response to Haynes'* own questions, Korkow testified that she reviewed data about how many assistant managers were terminated between 2011 and 2013, their ages, and why they were terminated.  12-ER-2635:21-2636:4.

Home Depot then conducted its direct examination of Korkow.  During Haynes' employment, Korkow worked as District HR manager for District 21 (not District 199) and had no role in Haynes' termination. 12-ER-2662:4-20; 2665:8-16.  At the time of her trial testimony, in her job as Regional HR Director for the Gulf region, Korkow could access historical data for employees who worked in District 199 from 2010-2013, including the Santee store, from a database called "Tesseract."  12-ER-2666:1-2668:11.

The district court overruled Haynes' only objection (hearsay) to Korkow's testimony about ASM demographic information stored in Tesseract.[7]  12-ER-2668:22-2669:15.  Korkow testified that, as of January 30, 2013 (just before Haynes' termination) there were five ASMs in the Santee store, three had an annual salary of more than $70,000 (2 of 3 were over 40) and two had a salary less than $70,000 (one under and one over 40).  12-ER-

---

[7] Home Depot's interrogatory responses stated ASM hire dates, not age.  *See* 18-ER-3939-43.

2670:6-2671:5.  Between June 1, 2010 through the end of 2013 (when Collins was SM in Santee), eleven ASMs worked in Santee, seven of the eleven were over 40, and 4 were under 40.  12-ER-2671:6-2672:3.  Two were listed as performance-based terminations, one over 40 (Haynes) and one under 40.  One of the terminations earned more than 70,000 (Haynes) and one earned less.  12-ER-2672:6-2672:25.

In District 199 during the relevant time, three ASMs earned more than $80,000 (all over 40).  None were terminated.  Three other ASMs in District 199 were over 60.  Only Haynes was terminated.  12-ER-2673:1-2674:11. Between the end of March 2011 (Grooms' start) and December 31, 2013[8], Home Depot involuntarily terminated 16 ASMs:  6 were under 40, 3 were 40-49, 6 were 50-59, and one (Haynes) was 60 or older.  Of the 16, four had annual salaries less than $70,000 and 12 had annual salaries greater than $70,000.  The highest paid ASM who was terminated was under 40.  Two of the 16 terminated ASMs earned salaries less than $60,000 per year.  One was under 40; one was over.  12-ER-2674:12-2676:3.

Entirely separate from the ASM demographic information, Korkow explained that, to create performance notes as an HR person, she would use a

---

[8] Grooms became DM in District 199 on March 28, 2011. 12-ER-2668:17-2669:4; 15-ER-3483:8-14.

computer system to enter the note and then sign it electronically by inputting her employee ID and clicking her mouse. 12-ER-2687:18-2689:10. When the note would print, it displayed the "signature" name connected to her employee ID. *Id.* In 2012, Korkow's surname was "Michelsen." She changed it to "Korkow" after her marriage. *Id.* Once she changed the name associated with her employee ID to "Korkow," any note would print with the name "Korkow" regardless of whether she created the note before she changed her name (Q. "Do you have knowledge of why it wouldn't show Courtney Michelson if that had been your name at the time you created the note?" A. "Because it's associated with your ID number."). *Id.* The signature changes on documents—showing the current name associated with the Employee ID at the time of printing—forms the basis for all of the "false document" allegations against Korkow. None of these documents relate to Haynes (Korkow made no manager notes as to him and had nothing to do with him).

Haynes sought, and the trial court ordered, production of the demographic data that Korkow had reviewed for her testimony. 12-ER-2712:2-2713:1. Home Depot produced the raw data from the Tesseract database—in both an electronic Excel spreadsheet and printed copies—the evening after the first day of trial. 12-ER-2725:7-2726:4;12-ER-2737:10-13.

24

On the trial's second day, Haynes' counsel acknowledged that Home Depot had produced the Tesseract database in Excel format and stated in reference to the Excel files, "I would like to recall [Korkow] and ***make this an exhibit*** and ask her where these numbers came from that she was testifying to." 12-ER-2725:16-18. "This" referenced the Tesseract Excel files Korkow reviewed. The district court granted counsel's request. 12-ER-2727:3-8.

After identifying the Excel database as an exhibit, the district court followed up on the request by Haynes' counsel by asking Korkow to lay a foundation for it, and it was admitted as Exhibit 625 without objection. 12-ER- 2738:6-2739:8. Indeed, Haynes sought its admission and thanked the district court for admitting it. Haynes then examined Korkow extensively on the content of Exhibit 625. 12-ER-2740:4-2752:24. Korkow denied knowledge of the actual hours employees worked in the store: the report did not show this information.[9] 13-ER-2744:3-6.

---

[9] While it is improper for Haynes to base appellate arguments on a deposition Korkow gave more than a year after the trial (in 2022) in a different case (19-ER-4210 *et seq.*)—something never presented to the district court or jury—the questions asked of Korkow regarding labor hours at that 2022 deposition do not contradict or call into question any testimony given by Korkow in this case. The 2022 deposition focused on a purported Peoplesoft database (not Tesseract) for the period of 2014 to 2016 (not the period of the Tesseract database Korkow accessed for this case). The 2022 deposition questions focused on hours worked; the Tesseract database in this case contained no such information.

### 4. Carl Haynes

Haynes managed four departments and supervised Department Supervisors who reported directly to him. 15-ER-3376. Haynes regularly exercised discretion and independent judgment in running both his departments and the entire Santee store. He managed profitability, analyzed trends, determined challenges, developed strategies to respond to challenges on an ongoing basis every day, determined work tasks, and assigned work. 15-ER-3377:3-3378:21; 3385:7-3386:12. Haynes testimony regarding how he spent his time corroborated Collins' testimony that Haynes devoted about 70% of his time to management responsibilities.

With respect to his performance write-ups, Haynes did not dispute the facts stated but, instead, their significance. For example, Haynes admitted the ZMA policy that was in place for two years before he was written up for not following it. He improperly signed off on ZMA markdowns without actually observing their destruction. *See* 15-ER-3413:1-23. Haynes did not dispute the importance of the store readiness checklists or his repeated failure to promptly submit them, nor did he have knowledge of any other ASM who avoided a write-up despite a similar failure. 15-ER-3418:13-3420:14; 3425:12-17. As to his demonstrated unfamiliarity with First Phone technology, Haynes conceded it while on a walk with a Regional Vice President. 15-ER-3412:2-8. Haynes

26

agreed that Collins asked him to submit a written performance improvement plan by September 10, 2012, detailing actions to improve in-stock performance, customer service, and performance management and agreed he did not submit the requested plan. 15-ER-3425:2-10. Haynes admitted that in December of 2012, Grooms noted in-stock problems in his departments, and that Collins asked him for a written follow-up on the walk, which he failed to provide. 15-ER-3428:7-3429:9.

Finally, Haynes offered no evidence that he exhausted his administrative remedies before filing suit by filing the required charge with California's state agency, the DFEH. As for the statute of limitations, Haynes testified he "first suspect[ed] age was a factor in [his] termination" "about 11 to 12 months after [he] was terminated." 15-ER-3364:9-13. But he never identified any fact that caused him to reach this conclusion at that time or that he did not know before or at the time of his termination.

Haynes concluded Collins treated him differently because of his age "shortly after [Mr. Collins] got there" or "four years before I was terminated." 15-ER-3367:8-3368:2. He thought Grooms treated him differently because of his age and/or "longevity with the company which equates to age" "[w]ithin six months of Grooms being there." 15-ER-3368:3-19. He first concluded his discharge was related to his age on the day he was terminated, but "prior to

that, [he] knew [he] was a target" because of performance write-ups he received. 15-ER-(id. at 3369:14-3371:1. During his employment, Haynes thought the motivation his treatment "was the age difference between Mr. Collins and Mr. Grooms and [him]self." 15-ER-3371:2-12.

### 5. Giovanna Voight

Haynes called Giovanna Voight who never worked with Haynes and never worked in the Santee store. 13-ER-2865:7-13; 2870:25-2871:6. As a Store Manager from 2011-2013, Voight attended "Roundtable" meetings with Grooms where the performance of every ASM was discussed. She never heard Grooms say that Haynes (or any other ASM) needed to go because he was too old or because he made too much money. 13-ER-2870:11-24.

### 6. Sheila Jorgensen

Haynes also called Sheila Jorgensen who was the HR District Manager for the Santee store at the time of Haynes' termination. She attended Roundtable meetings where ASM performance was discussed. 13-ER-2879:9-16. She testified "there is no quota system at Home Depot that I knew of" and she denied any ranking system. 13-ER-2879:17-21.

### 7. Michael Astorino

Haynes called Michael Astorino[10] who never managed Haynes or District 199 during Haynes' employment, and was not involved in Haynes' termination. 13-ER-2952:15-17. Haynes asked Astorino about assorted allegations of other people in other stores (not Santee) having nothing to do with Haynes' case. *See, e.g.*, 13-ER-2962:25-2964:23. Astorino testified as to Haynes, "I've never heard about him, I've never met him. I've heard nothing." 13-ER-2965:14-18. Yet, Haynes persisted in asking about events in other stores and other districts. *See, e.g.*, 13-ER-2965:19-2968:17. Astorino denied a trend or policy to give management jobs to younger individuals. 13-ER-2968:18-20. He also denied that Michael Kull (who never worked in the Santee store or in the same district as Haynes) complained to him about fabricated write-ups. 13-ER-2951:24-2952:1.

### 8. Janet Wheeler

Haynes called Janet Wheeler who, on cross, denied knowledge of Collins giving any employee a false rating. 14-ER-3147:18-19. She denied knowledge of any SM recording in a counseling note events that never occurred. 14-ER-3150:24-3151:3. She had no knowledge of anyone putting false information into a write-up for Haynes. 14-ER-3151:8-10. She was not

---

[10] Astorino's name is misspelled "Astirino" in the transcripts.

aware of any instance where a store manager wrote up an ASM for conduct that did not happen. 13-ER-3151:11-13. She never heard Grooms say anything about the chronological age of people being a motive to terminate. 13-ER-3152:12-14.

During her redirect, the district court sustained objections to questions about a Ninth Circuit ruling on a motion concerning sanctions against Haynes' then attorney. 13-ER-3165:9-21. Also during redirect, out of the scope of the cross and outside of the jury's presence, Haynes' counsel insisted on offering purported evidence that Wheeler herself had received a "false" write-up. The trial court rightly noted that nothing in Wheeler's testimony on cross raised the issue of her own allegations that she was falsely accused of something and concluded that testimony about Wheeler's own allegations had nothing to do with Haynes. *See* 13-ER-3168:13-20; 3170:7-3171:13.

### 9. Ryan Murph

Haynes called Ryan Murph, who was under 40 when his employment with Home Depot ended. 14-ER-3196:6-14. Haynes used Exhibit 625 (the Tesseract data to which he now objects) during the examination. 13-ER-3196:20-3199:11.

### 10. Amapola Martin

Haynes called Amapola Martin, who was never the subject of false performance write-ups. 14-ER-3211:24-3212:1. She did not work in Santee with Haynes from 2010-2013, and had no knowledge of his work during this period. 14-ER-3214:3-11, 3218:5-13.

### 11. Michael Kull

Haynes called Michael Kull, another witness who never worked with Haynes and who was not terminated while Grooms managed District 199. *See* 15-ER-3281:6-22; 3282:9-18. Home Depot terminated Kull in 2017 (four years after Haynes). 15-ER 3276:7-13. Haynes' counsel examined Kull about his work hours (even though he never worked as an ASM in Santee), his job duties as an ASM in another store, and whether he "noticed a termination trend at Home Depot." 15-ER-3279:21-3281:1. The district court allowed all such testimony.

### 12. Nicholas Bulat

Home Depot called Nicholas Bulat who worked as an ASM at the Santee store with Haynes. 16-ER-3534:12-22. Bulat corroborated Collins' and Grooms' testimony of Haynes' poor job performance, testifying that Haynes had problems with store appearance and out-of-stocks, and he viewed Haynes' performance poorly. 16-ER-3534:23-3535:7, 3536:8-3537:14. One of Haynes' Department Supervisors came to Bulat with questions about

training that she should have been getting from Haynes regarding things like ordering product, filling out-of-stocks, and store placement of best sellers. *Id.* This Department Supervisor frequently went to Bulat to learn how to drive sales because she was not getting the training and coaching she needed from Haynes. *Id.* ("[H]e wasn't very active at leading."). After Haynes left, the store got better: "In-stock went up, customer service went up, our sales went way up . . . It was just a better overall environment, and the associates and customers responded to that." 16-ER-3539:25-3540:8.

### E. The Jury Instructions

Before trial, Haynes' counsel did not propose any instructions or special verdict form questions on the statute of limitations or administrative exhaustion. *See* 7-ER-1027-1166 (proposed jury instructions), 1177-78 (proposed verdict forms). Pursuant to Federal Rule of Civil Procedure 49(a)(3), Haynes thereby consented to having these issues decided by the district court, not the jury. Fed. R. Civ. P. 49(a)(3) (providing for waiver of the right to a jury trial on any issue of fact raised by the pleadings not demanded to be decided by the jury).

On July 8, 2021, the parties lodged proposed joint jury instructions and the parties' versions of verdict forms, 6-ER-1023-24, 1168-69. On the second day of trial, July 27, 2021, the district court provided its initial version of jury

instructions to the parties. 13-ER-2849:22-2250:2. The district court

requested hard copies of any "corrections, modifications, additions that you

want...I would like hard copies of what you would like to modify or add." 13-

ER-2995:23-2996:12. In response to the district court's request, on the third

day of trial, July 28, 2021, Home Depot provided revisions and additional

proposed instructions, including on "Exhaustion of Administrative Remedies"

and "Statute of Limitations Defense." The district court held a lengthy

discussion on the jury instructions (14-ER-3110:8-3111:25; 14-ER-3242:11-

3263:17) and the statute of limitations and exhaustion instructions (14-ER-

3263:18-3265:21).[11]

On the fourth day of trial, July 29, 2021, the district court held further

discussions on the jury instructions. 15-ER-3357:15-3359:18; 15-ER-3435:13-

3440:11; 15-ER-3440:12-3445:8. The district court invited briefing on the

instructions. 15-ER-3520:3-17. On July 30, 2021, the district court provided

the parties with a proposed final version of jury instructions and verdict forms,

---

[11] A declaration from Haynes' counsel (ECF 162-1) erroneously suggests that she received these instructions from Home Depot's counsel on July 29, 2021. The trial transcript, however, shows that this took place the day before, on July 28, 2021. 14-ER-3263:18-3265:21. Furthermore, this declaration erroneously states that the draft instruction for Exhaustion of Administrative Remedies was "received...on Thursday July 29, 2021 from Home Depot's counsel." The instruction attached to the declaration, however, was not Home Depot's draft instruction (provided on July 28), but the Court's proposed instruction given to the parties on July 29.

including a "Delayed Discovery" instruction to address the exhaustion issue.
6-ER-1189.

On the fifth day of trial, August 2, 2021, the district court ruled that
Haynes' trial testimony in court "put exhaustion back on the table as an issue
in the case... that question can go to the jury. It's a fact question for them to
decide." 16-ER-3565:22-3568:21. The district court then heard from counsel
on the instructions and verdict forms. 16-ER-3569:3-3573:11. As to the
Delayed Discovery instruction, the district court explained, "the instruction
was drafted right out of California case law from the California Supreme
Court, so I think the question should be did Carl Haynes have notice or
information of circumstances to put a reasonable person on inquiry to seek to
learn the facts necessary to bring a cause of action by February 12th, 2014. The
jury can say yes or no." 16-ER-3573:5-10. Haynes' counsel responded,
"That's fine." 16-ER-3573:11.

### F. The Verdict

On August 2, 2021, the jury returned its verdict. 5-ER-955-60.

Verdict Form No. 1:

> 1. Did Home Depot prove that Carl Haynes was a managerial
>    employee (and therefore exempt from overtime pay requirements)
>    between February 13, 2012 and February 12, 2013?

Answer: Yes or No.   Yes . 5-ER-959.

Verdict Form No. 2:

1. Did Carl Haynes have notice or information of circumstances to put a reasonable person on inquiry to seek to learn facts necessary to bring an age discrimination claim by February 12, 2014?

Answer: Yes or No. __Yes__.

2. Did Carl Haynes prove that his age was a substantial motivating reason for Home Depot's decision to terminate him?

Answer: Yes or No. __No__. 5-ER-955.

Based on these verdict forms, the district court entered Judgment for Home Depot.

## A.    Post-Trial Motions

Prior to the close of evidence, Home Depot filed a motion for judgment as a matter of law pursuant to Rule 50(a). HDSER-98-125. Haynes did not file a Rule 50(a) motion despite clear warnings to counsel about the impact of failing to timely file. 14-ER-3265:10-22. After entry of judgment, Haynes filed a motion for a new trial pursuant to Rule 59, exclusively arguing that the trial court's time limits constituted an abuse of discretion. 3-ER-566-587. The district court denied this motion. 1-ER-2-6.

## STANDARD OF REVIEW

"Evidentiary rulings by a district court are not reversible absent clear abuse of discretion." *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 448 (9th Cir. 1994). Moreover, such rulings "should not be reversed absent some prejudice," *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 927-28 (9th Cir. 2000), meaning redressable errors are only those that affect the substantial

35

rights of the parties.  28 U.S.C. § 2111; *Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005).

Haynes' challenges jury instructions. The legal accuracy of a jury instruction is reviewed de novo.  *Greisen v. Hanken*, 925 F.3d 1097, 1107 (9th Cir. 2019).  However, the party challenging an instruction must show how it affected the outcome of the case in a way that was prejudicial.  *Id.*

Haynes also challenges the trial time limits and the district court's decision to permit Home Depot to file a renewed motion for summary judgment.  Issues relating to trial management, including time limits, are reviewed for abuse of discretion.  *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995).  There can be no reversal unless there was error that affected the substantial rights of the appellant.  *Id.* at 1510-11.

Finally, Haynes challenges the district court's order granting summary judgment to Home Depot on the issue of punitive damages.  An order granting summary adjudication is reviewed *de novo*.  *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 904 (9th Cir. 2021).

## ARGUMENT

## I.  THIS APPEAL IS LIMITED TO MATTERS IN THE TRIAL RECORD; ALL OTHER ITEMS SHOULD BE STRICKEN

Documents not presented to the trier of fact before entry of judgment should be stricken from the record. They are not properly considered on appeal. *Lowry v. Barnhart*, 329 F.3d 1019, 1024-25 (9th Cir. 2003); *Kirshner v. Uniden Corp. o*f *America*, 842 F.2d 1074, 1077 (9th Cir. 1988).   Federal Rule of Appellate Procedure 10(a) defines the scope of the available record on appeal. "Papers not filed with the district court or admitted into evidence by that court are not part of the record on appeal."  *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 594 (9th Cir. 2002) (quoting *Kirshner*, 842 F.2d at 1077).  Relying on documents that "have never before seen light of courtroom day" is "a particularly serious violation" of Circuit rules.  *Lowry*, 329 F.3d at 1025; *Barcamerica Int'l USA Tr.*, 289 F.3d at 595 (finding deposition transcripts that were merely lodged, and not filed, with the district court are not properly included in the record on appeal).

Haynes repeatedly fails to adhere to this fundamental requirement.  All of these improperly included and referenced materials should be disregarded.[12]

---

[12] The Court should also strike the offending materials from Haynes' Excerpts of Record for including these manifestly improper items.

## II.     THE TRIAL COURT'S EVIDENTIARY RULINGS PROVIDE NO BASIS FOR REVERSAL

Evidentiary determinations are given "great deference" because "trial judges are better able to sense the dynamics of a trial than we can ever be, and broad discretion must be accorded them in balancing probative value against prejudice."  *U.S. v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011); *see also Liew v. Official Receiver and Liquidator (Hong Kong)*, 685 F.2d 1192, 1195 (9th Cir. 1982).  In making determinations under Federal Rule of Evidence 403, if the evidence is of slight probative value, if any at all, "a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding the evidence."  *Espinoza-Baza*, 647 F.3d at 1189.

### A.     The In Limine Rulings at Issue Were Tentative and Excluded Nothing; They Provide No Basis for Reversal

Motion in limine rulings are potentially significant only if definitive, *i.e.,* they clearly exclude evidence.  If not, such motions do not preserve an evidentiary issue for appeal.  Fed. R. Evid. 103(b); *U.S. v. Lui*, 941 F.2d 844, 846 (9th Cir. 1991) ("A pretrial motion in limine preserves for appeal the issues of admissibility of that evidence if . . . the district court's ruling permitting introduction of the evidence was explicit and definitive"); *Tennison v. Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("[w]here a district court makes a tentative in limine ruling excluding evidence, the exclusion of

that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial"). None of the in limine rulings Haynes challenges excluded any witness or any specific evidence.

### 1. Motion In Limine No. 1 ("MIL 1")

Home Depot withdrew MIL 1. 8-ER-1662-64, 1895-97. The district court made no ruling. No basis for appeal exists.

### 2. Motion In Limine No. 2 ("MIL 2")

MIL 2 sought to exclude certain "me too" witnesses. The trial court did not make a definite ruling or exclude any witness or evidence:

> My concern is that the people who would testify would have to be people with personal knowledge about the decisions being made by management. They either attended meetings or got memos or – not that they heard from somebody, or heard from somebody that this was happening – or that they worked with the plaintiff and could testify about his particular situation. It is not appropriate testimony for someone to come in and say, "Well, I was terminated because I was over 40." That's a legal conclusion and an opinion. That's not fact. The fact of the termination would have to have either resulted from litigation where that was found or that there's some factual basis to support that opinion.

8-ER-1618:19-1619:5. The district court concluded:

> So understanding that, ***I'm not going to just exclude everybody***. So the motion is sort of granted in part and denied in part. You'll need to make some choices and bring witnesses, if you're going to go down that road, who have personal knowledge. Do you understand?

8-ER-1619:6-10. Haynes' counsel stated all planned witnesses satisfied the personal knowledge requirement of Federal Rule of Evidence 602. 8-ER-1619:11-20. The district court left open the possibility of *voir dire* as to a specific witness. 8-ER-1622:4-8. During trial, the district court permitted several witnesses to testify over Home Depot's later and more specific objections, *e.g.* Michael Astorino (13-ER-2730-2733), Rudy Peralta (13-ER-2734-2735)[13], and Giovanna Voight (13-ER-2735-2736). MIL 2 did not exclude anyone, and no basis for appellate review exists.

### 3. Motion in Limine No. 3 ("MIL 3")

MIL 3 was limited to Haynes' overtime claim, and sought to exclude witnesses who had no personal knowledge of the job duties Haynes performed at the Santee store during the time relevant to his overtime claim. 9-ER-1882-83. The district court made no definitive ruling, stating:

> You can certainly bring in any assistant managers
> who work in the same store with the plaintiff and
> would have personal knowledge as to during the
> relevant time period of what kind of chores and tasks
> he was being asked to do that were of a
> nonmanagerial requirement. What was done in other
> stores at other times by other people is not relevant.

8-ER-1622:14-19.

---

[13] Ultimately, Haynes did not call Peralta to testify.

Haynes' opening brief, however, misstates the scope of MIL 3 and the district court's ruling. AOB 19. MIL 3 and the district court's ruling were limited to witnesses for Haynes' overtime claim. Insofar as this tentative decision frames any issue for appellate review, the ruling was a correct, proper exercise of discretion. Federal Rule of Evidence 402 requires evidence to be relevant. Statements made without personal knowledge are inadmissible. Fed. R. Evid. 602. Testimony about job performance from employees in other stores does not establish the job duties Haynes performed or spent on them for overtime exemption purposes. *Mendoza v. Home Depot, U.S.A. Inc.*, No. 09-CV-05843-SJO-JCx, 2010 WL 424679, at *8 (C.D. Cal. Jan. 21, 2010). And the district court could properly decide that, even if such evidence was marginally relevant, it would tend to confuse and distract the jury from the necessary focus on Haynes.

Despite this ruling, the district court allowed witnesses to testify about job duties and experiences in other stores. *See, e.g.*, 15-ER-3279:21-3281:22 (Kull questioned about job duties even though he "never worked in the Santee store"). While Haynes contends seven witnesses could not testify as a result of this ruling (AOB 24), he never attempted to call a single one. He made no proffer as to what they might have said. No issues have been preserved for review and there is certainly no basis to find a prejudicial abuse of discretion.

41

**B.    The District Court Properly Sustained Home Depot's Objection to a Single Question Posed to Michael Kull**

Haynes inexplicably invokes Kull's testimony as some basis for review. AOB 23.  The district court properly sustained a single objection during Kull's testimony.  After showing Kull a document that was not admitted at trial (and thus is not in the record), Haynes' counsel asked Kull, "can you describe for the jury what the incident was?" 15-ER-3277:19-20.  Home Depot objected citing relevance, Federal Rule of Evidence 403, and improper character evidence.  15-ER-3277:21-23.  At sidebar, the district court stated, "this is an incident that happened three years after the plaintiff was terminated in a different store.  It involves different people and none of the managers involved [in Haynes' case].  What is the relevance of this?"  15-ER-3278:3-6.  Haynes' counsel claimed it would impeach Astorino's testimony that he was wasn't advised that these incidents were occurring.[14]  15-ER-3278:7-10.  The district court then noted that the document said nothing about Astorino, thus undermining counsel's argument.  *Id.*  Per the court, nothing in the document could advance the jury's knowledge of how Haynes was treated in 2013 given

---

[14] Astorino had earlier testified that Kull never complained to him about fabricated write-ups.  13-ER-2951:24-2952:1.  ***Kull confirmed that he never complained to Astorino about fabricated write-ups***.  15-ER 3276:16-3277:4, 3281:25-3282:2.  Since Kull confirmed he had never complained to Astorino, nothing needed to be impeached.

it might only bear on Kull's claims of "how he was treated in 2016 by different people at a different store."  15-ER-3278:1-3279:3.  Haynes' counsel responded that he could lay foundation, but the announced, "I'm not going to," and moved on with his questioning.  15-ER-3279:4-12.

The district court did not prejudicially abuse its discretion.  Among other things, Haynes never showed by offer of proof how the Kull incident might illuminate  Haynes' case. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (cautioning against the introduction of "me too" evidence where the witnesses did not work in the same group as the plaintiff and had not worked under the plaintiff's supervisor who made the termination decision). Haynes' failure to make an offer of proof forfeited any claim on appeal.  Fed. R. Evid. 103(a)(2); *Katz v. Regents of the University of California*, 229 F. 3d 831, 837 (9th Cir. 2000) (failure to make an offer of proof—particularly once invited to do so by the district court—precludes appellate arguments).

Additionally, nothing shows how the lack of an answer to the question had a prejudicial effect on Haynes' rights. Kull's testimony elicited that he had complained to Human Resources and was terminated after he complained.  15-ER-3280:19-3282:5.  This "me too" evidence was admitted, and the jury heard

it. There is no basis for reversal. *McEuin v. Crown Equip. Corp.*, 328 F. 3d 1028, 1032 (9th Cir. 2003).[15]

### C. Korkow's Testimony Provides No Basis for Reversal

When Korkow testified about employee demographic data, Haynes' sole objection was hearsay. *See, e.g.*, 12-ER-2668:22-2669:16. The district court overruled the hearsay objection because Korkow's testimony triggered the business records exception to the hearsay rule. *Id.*; *see also* Fed. R. Evid. 803(6). Korkow testified that she holds the position of Regional HR Director for Home Depot. 12-ER-2662:1-3. This position gave her access to "historical employee data for employees who worked in district 199," "ASMs who worked in district 199," and "employees who worked in the Santee Home Depot store," during the period 2010 to 2013. 12-ER-2666:8-2668:18. Korkow explained that employee demographic information was maintained electronically in an IBM database called Tesseract. 12-ER-2666:16-21. Information got into the Tesseract database by employees and supervisors entering it. 12-ER-2666:22-2667:3. The database stored information about employee birth dates, salaries, store locations and numbers, emergency

---

[15] Haynes misrepresents Kull's testimony by stating "the USDC would not allow Mr. Kull to testify about" roundtable meetings where terminations were discussed. AOB 23. But Kull did testify about roundtables without objection. *See* 15-ER-3281:4-3282:5.

contacts, and reasons for termination. 12-ER-2667:4-2688:8. For salaried managers (like ASMs), HR entered into the database the reasons for termination using contemporaneous data provided by store managers. *Id.* The database recorded the reason for each termination from among the options: performance violation, conduct violation, not returning from leave, or resignation. *Id.*

Korkow thus supplied the foundation for her testimony: entries were made in the database by individuals with knowledge of the employee information, the data was kept in the course of Home Depot's regularly conducted business activities, the data was stored and maintained as part of the regular practice of collecting and maintaining employee information, and Korkow was qualified to testify about these subjects. Additionally, Haynes did not show that the source of the information or the method or circumstances of preparation indicated a lack of trustworthiness. The district court's ruling on the hearsay objection was not an abuse of discretion.

In a belated effort to argue her testimony was untrustworthy, Haynes relies on materials that were not presented to the trial court here—information from a deposition in a different case, taken ***after*** the trial here, concerning a ***different database*** (Peoplesoft). This improper argument goes beyond the record, directed at claims that have not been preserved for appellate review.

Haynes further argues that the Tesseract database was untrustworthy because it listed Haynes' *salary* as about $77,000, but "Haynes was making over $100,000.00 per year." AOB 29, 39. This argument is frivolous. Haynes ***stipulated*** that "Plaintiff's annual salary was $76,904." 7-ER-1559. Haynes also argues that "the Court and HD's counsel admitted the Excel spreadsheet was admittedly defective." AOB 31, citing 13-ER-2738. This assertion is pure fabrication. Nothing in the cited trial transcript remotely supports the assertion. Haynes also contends he "was not allowed to examine Korkow on the Excel Spreadsheet..." AOB 32. Yet the district court allowed Haynes to recall Korkow and he questioned her for 23 minutes about the spreadsheet. *See* 3-ER-565; 13 ER-2739-2752. Korkow confirmed that all data informing her testimony was contained in Exhibit 625:

> Q And where is that data?
>
> A It's here. It's on these spreadsheets.
>
> Q Okay. So everything you talked about, all those numbers and everything, are right here on these spreadsheets?
>
> A Yes.

13-ER-2749:5-9.

Haynes misleads this Court by misciting the trial transcript. Haynes emphasizes a purported trial court statement that "Plaintiff was entitled to the 'notes'":

> THE COURT: I don't know if she can answer that technical question because we have all kinds of internet problems with people accessing anything in the courtroom. **Plaintiff was entitled to the "notes".** [Emphasis added].
> ...

AOB at 30, citing 12-ER-2694. The actual transcript says no such thing:

```
13          THE COURT:  I don't know if she can answer that
14   technical question because we have all kinds of internet
15   problems with people accessing anything in the courtroom.
16          ATTORNEY KEVIN MIRCH:  I can ask a different question.
17          THE COURT:  Go ahead.
```

12-ER-2694.

Next, Haynes further misleads by suggesting testimony regarding the ASM job description (Exhibit 510, 18-ER-3957-58) somehow relates to the demographic data in Exhibit 625 (the Tesseract data base). AOB 31-32. However, the testimony he quotes, "Objection. It's a 2007 document," relates to the ASM job description (Exhibit 510), and has nothing to do with the Tesseract database.

The only objection Haynes made to Korkow's testimony regarding ASM demographic data was hearsay. As discussed above, Korkow testified based on her personal knowledge of business records. The district court properly

47

overruled Haynes' hearsay objection, and he made no others. There was no

prejudicial abuse of discretion.

### D. Admission of Exhibit 625 Provides Not Basis for Reversal

Haynes asked the district court to make the Tesseract database an exhibit

(Ex 625; 18-ER-4189-4206), failed to object to its admission, and then used it

extensively. There was no prejudicial error. [16]

### 1. The Invited Error Doctrine Defeats Haynes' Argument

Haynes invited introduction of Exhibit 625. "One may not complain on

review of errors below for which he is responsible." *Sovak v. Chugai Pharm.*

*Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002); *U.S. v. Reyes-Alvarado*, 963 F.2d

1184, 1187 (9th Cir. 1992) (explaining a party's counsel can invite error for his

or her client by eliciting inadmissible evidence, thereby waiving the client's

right to raise the error on appeal).

Haynes sought the production of the business records Korkow relied on

for her trial testimony, invited the admission of the data (Exhibit 625), and

used it extensively when examining witnesses. 13-ER-2740:4-2752:12. He

cannot complain now on appeal that the admission of that data was prejudicial

---

[16] Haynes also makes claims having no evidentiary basis at all, such as
claiming that "HD's electronic system has two (2) distinct parts," and referring
to scanned documents, images, and printing. AOB 34. None of this
information is true as framed, and none is supported by anything in the record.

error because the decision did not go his way. *Hudson v. Wylie*, 242 F.2d 435, 449 (9th Cir. 1957) *cert denied*, 355 U.S. 828 (1957) (stating the "settled rule of law" that "a party cannot successfully complain or error for which he himself is responsible or of rulings which he has invited the trial court to make").

### 2. Haynes Forfeited Any Objection to Exhibit 625

Forfeiture is also established because Haynes never objected to the admission of Exhibit 625. Fed. R. Evid. 103(a); *Kelly v. City of Oakland*, 198 F.3d 779, 786 (9th Cir. 1999) ("Objections to evidence must be made contemporaneously."). The trial transcript shows:

> THE COURT: All right. I want to get this admitted. And so, Ms. Korkow, I'd like you to just lay the foundation for this. This was – the materials, the Home Depot records that you reviewed to provide your testimony yesterday; is that correct?
>
> THE WITNESS: Yes.
>
> THE COURT: And can you confirm for me that the spreadsheet that's on the screen right now, that's all of it?
>
> THE WITNESS: Yes.
>
> THE COURT: The Court is going to admit this electronic version . . . That way the jury can follow along.
>
> ATTORNEY KEVIN MIRCH [FOR HAYNES]: That is admitted, Your Honor?
>
> THE COURT: Yes.

> ATTORNEY KEVIN MIRCH [FOR HAYNES]:
> Thank you.

13-ER- 2738:6-2739:1.  Haynes made no objection, and it is too late now.

Haynes now contends this trial exhibit was an inadmissible "summary" under Federal Rule of Evidence 1006, but he made no such objection at trial. In fact, Korkow testified to the contrary, explaining that Exhibit 625 contains raw data about Santee store and District 199 employees covering 2010 to 2013. 13-ER-2749:5-9.

### 3.    Exhibit 625 Is an Admissible Business Record

Moreover, Exhibit 625 is an admissible business record with the necessary foundation laid by Korkow, as discussed above.

### E.    There Was No Erroneous Exclusion of "Fabricated Write-ups"

Haynes never sought to admit evidence of purported "fabricated write-ups," yet complaint such evidence was excluded. AOB 40-44.  Haynes cites nothing in the record to support his argument, though he refers to the _admission_ into evidence of a document used during Sheila Jorgensen's testimony.  AOB 40, 44 (citing 13-ER-2888-89).

Haynes then digresses into a sanctions order against his attorneys, the Mirch Law Firm, but this has no relevance to the case on appeal.  The sanctions were originally ordered because Haynes' counsel filed with the district court a declaration from Janet Wheeler after she had testified in a

deposition that the declaration was not accurate. On appeal of the sanctions order, this Court held:

> We recognize, however, that the district court could impose sanctions on the Mirch Law Firm for attaching the Wheeler declaration to some of its filings. The Mirch Law Firm learned that Wheeler had recanted the word "falsely" from her declaration during a deposition but inexplicably chose to file declarations containing the same language in its oppositions to Home Depot's motions for summary judgment. The district court, however, should have given [attorney] Erin Hanson, who filed the declaration but was on maternity leave when the court rendered its sanctions order, an opportunity to be heard before doing so to determine whether she or other members of her firm acted in bad faith.

*Haynes*, 800 F. App'x at 487. This Court remanded for reconsideration of the sanctions.

During the cross-examination of Wheeler at trial, she testified that she did not know of any specific false write-ups of ASMs by SMs, including any false writeups of Haynes. 14-ER-3140:16-24; 3150:24-3151:13. Nor could she recall ever hearing Grooms saying anything about an age as a reason to terminate. 14-ER-3152:12-14. Haynes claims that he sought to "rehabilitate" Wheeler's testimony on redirect by asking her about this Court's sanctions decision. Wheeler was asked, "Do you recall a sanctions motion being filed against you and me if you didn't change your declaration?" 14-ER-3165:9-14. Home Depot objected because the question misstated the facts: the sanctions

51

motion was filed long after Wheeler signed her declaration. *Id.* Wheeler also testified that she did not feel threatened at the time she signed her declaration. 14-ER-3165:7-8. Wheeler was then asked if her own case went to the Ninth Circuit and whether one of the issues was sanctions. 14-ER-3165:16-21. Again, this had nothing to do with Haynes, and the district court properly cut off the inquiry. *Id.* Furthermore, the sanctions decision could not possibly have refreshed Wheeler's recollection as to anything relevant to the Haynes trial.[17] And, further reinforcing the trial court's exercise of discretion, details about the sanctions decision would have created a distraction, possibly even prejudice to Home Depot, based on a peripheral matter that might be prejudicially misunderstood by the jury.

Moreover, any error was harmless. Whether counsel was sanctioned would have no tendency to prove or disprove Haynes' claims. As the district court explained to Haynes' attorney: "If you have any documents that [Wheeler] can look at to refresh her recollection regarding Mr. Haynes or Mr. Housh, who are the two people she discussed in her declaration who she believed had false write-ups, you can show her those, if that helps her lay a

---

[17] Haynes also tries to tie this sanctions issue and write-ups to Korkow and a request for a limiting instruction regarding Korkow. A dispute over refreshing Wheeler's recollection has nothing to do with Korkow.

foundation for the declaration she gave. Those are it." 14-ER-3169:18-23.

Haynes offered no such evidence, and there was no error in the district court's

rulings.

## III. THE JURY WAS PROPERLY INSTRUCTED; HAYNES HAS NOT DEMONSTRATED ANY BASIS FOR REVERSAL

To prevail on an instructional challenge on appeal, the appellant must

show *both* error *and* that the error was prejudicial. *See Clem v. Lomeli*, 566

F.3d 1177, 1181 (9th Cir. 2009); *Tritchler v. Cty. Of Lake*, 358 F.3d 1150,

1154-55 (9th Cir. 2004). "In reviewing jury instructions, the relevant inquiry

is whether the instructions as a whole are misleading or inadequate to guide the

jury's deliberation." *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir.

2000). Here, the instructions properly guided the jury on what constitutes

"delayed discovery" as articulated by the California Supreme Court.

Moreover, the delayed discovery instructions could not possibly have

prejudiced Haynes because: (1) Haynes presented no evidence of any fact that

he first learned after February 12, 2014, meaning the jury had no basis to find

that Haynes was delayed in discovering his cause of action regardless of the

instruction; and (2) the jury specifically found that age did not substantially

motivate the decision to terminate Hayne so his claims fails even if it was

presented in a timely fashion.

## A. Home Depot Did Not "Forfeit" Either Its Statute of Limitations Defense to Haynes' Wrongful Termination Claim or Its Claim that Haynes Failed to Exhaust Administrative Remedies

A two-year statute of limitations applies to claims for wrongful termination in violation of public policy under California law.[18] Cal. Code. Civ. Proc. § 335.1. An employee who wishes to file suit under the FEHA "must exhaust the administrative remedy provided by the statute by filing a complaint with the" DFEH, "and must obtain from the [DFEH] a notice of right to sue." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996) (holding that the one-year statutory period runs from the date of termination). "The timely filing of an administrative complaint" before the DFEH "is a prerequisite to the bringing of a civil action for damages." *Id*.

Under the FEHA, Haynes needed to file an administrative claim within one year of his termination, *i.e.* by February 12, 2014. If, however, he could have proven that he "first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence" the limitations period for filing a claim can be extended to one year and 90 days after the termination. Cal. Gov't Code § 12960(d)(1).[19]

---

[18] Federal courts sitting in diversity apply substantive state statutory and common law, including the statute of limitations. *Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1008 (9th Cir. 2011).

[19] All references to Government Code section 12960(d)(1) refer to the version in effect as of January 1, 2018. Although the California Legislature amended

Home Depot terminated Haynes' employment on February 12, 2013. 7-ER-1557-1559. Haynes had two years—until February 12, 2015—to file a wrongful termination action. On February 13, 2015, ***after the two-year statute of limitations had run***, Haynes commenced this action. HDSER-4-30. Therefore, Haynes' wrongful termination claim is time barred as a matter of law. With respect to his claim for violation of the FEHA, Haynes failed to prove that he exhausted administrative remedies at all, let alone that he first learned of the facts giving rise to his claims more than one year after his employment terminated.

Home Depot pleaded statute of limitations and administrative exhaustion as defenses. 11-ER-2479-2503. In the PTO, Home Depot specifically reserved the right[20] to assert "Statute of Limitations" and "Failure to Exhaust." 8-ER-1573. Home Depot made this clear by: (1) including substantial argument in its trial brief (7-ER-1345-59) to which Haynes responded in a

---

the statute two times since this prior version, *see* Assembly Bill 9, effective January 1, 2020, and Senate Bill 807, effective January 1, 2022, neither of those versions applies retroactively. *See* Assembly Bill 9 (2019-2020) § 3 ("This act shall not be interpreted to revive lapsed claims.").

[20] Home Depot "reserved the right" because the parties stipulated to Haynes' termination date, and based on that date, his claims were barred by the statute of limitations as a matter of law. Home Depot perceived that the court would resolve these issues making them unnecessary for the jury. Yet, Home Depot retained the right to assert the defenses to the jury should the need arise, which it did.

separate trial brief (7-ER-1332-44); (2) submitting a jury instruction on the issues on Wednesday July 28, the third day of trial before Haynes testified (HDSER-90-97); (3) raising the issues with the district court on July 28, 2021 (14-ER-3263-3265:22); and (4) filing a Rule 50(a) motion for judgment on these grounds before the close of evidence on August 1, 2021 (HDSER-98-125).

Haynes argues that Home Depot forfeited its limitations arguments by failing to present jury instructions on them. First, Haynes is simply wrong. Home Depot presented jury instructions on both administrative exhaustion and the statute of limitations on July 28, 2021. HDSER-90-97; 14-ER-3265:6-7. Second, Federal Rule of Civil Procedure 49(a)(1)(3) provides that a party waives the right *for a jury to decide* an issue of fact unless, before the jury retires, the party demands its submission to the jury. Otherwise, the court may make a factual finding on the issue. *Id.* Had Home Depot actually failed to request jury instruction on the limitations and exhaustion issues (it did not), that would only mean it consented to the district court making these finding.

Haynes was on notice of the administrative exhaustion and statute of limitations issues from the very beginning of the case, through pretrial proceedings, and during trial. Despite this notice, Haynes' counsel never attempted to elicit testimony from Haynes on the issue, or even introduce the

56

Right to Sue Letter he received from the California administrative agency into

evidence. Haynes' forfeiture argument has no merit.

**B.  The District Court's Instructions Properly Guided the Jury on Delayed Discovery In Conformity with California Supreme Court Precedent**

The district court perceived that Haynes would present evidence at trial

of the April 11, 2014 DFEH Right to Sue Notice attached to Haynes'

complaint (this never happened),[21] leading to the delayed discovery jury

instructions. California Government Code section 12960(d)(1), in effect

during the relevant time period, extended the one-year limitations period in

limited cases of delayed discovery where "for a period of time not to exceed 90

day . . . a person allegedly aggrieved by an unlawful practice first obtained

knowledge of the facts of the alleged unlawful practice after expiration of one

year from the date of their occurrence." The California Supreme Court refers

to the Section 12960(d)(1) 90-day extension as a "delayed discovery"

exception to the statute of limitations. *See Pollock v. Tri-Modal Dist. Servs.,*

*Inc.*, 11 Cal. 5th 918, 944 (2021); *see also Williams v. City of Belvedere*, 72

---

[21] This reality raises another reason for Home Depot's reservation of its rights concerning the administrative exhaustion defense, "if necessary." If, as happened, Haynes never offered any evidence of exhaustion at all, there would be no need for an instruction. Once Haynes raised the issue, then Home Depot could present an instruction, which it did.

Cal. App. 4th 84 (1999) (finding FEHA claim barred by untimely exhaustion that took place after the one-year period and 90-day delayed discovery rule).

The California Supreme Court defined the standard for determining whether a delayed discovery exception exists, and the district court used this standard in its jury instructions. In *Fox v. Ethicon Endo-Surgery, Inc.*, 34 Cal. 4th 797 (2005), the Supreme Court stated the standard for delayed discovery: "[R]ather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, ***we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them***." *Id.* at 807 (emphasis added). In *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988) the court articulated the delayed discovery rule as follows: "Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.* at 1111-12. In *Miller v. Bechtel Corp.*, 33 Cal. 3d 868 (1983), the Supreme Court explained that when the plaintiff "became aware of facts which would make a reasonably prudent person suspicious, she had a duty to investigate further." *Id.* at 875.

Here, based on these definitive instructions about delayed discovery requirements, the district court gave Instruction No. 28 and Verdict Form 2,

Question 1. 5-ER-955-58, 5-ER-993. The instructions and verdict form were not erroneous.

Haynes' "law of the case" argument is misguided. The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in the action, even at subsequent stages. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio v. U.S.*, 136 S. Ct. 709, 716 (2016)). In Haynes' prior appeal, this Court held that Haynes was entitled to present to the jury the issue of the timeliness of his DFEH charge. *Haynes*, 800 F. App'x at 484. This Court did not adjudicate whether Haynes properly and timely exhausted his administrative remedies; it merely left the determination for trial. This Court made no holding on the legal standard for delayed discovery under Section 12960(d)(1) or what the words of the jury instruction should say. The "law of the case" doctrine does not apply.

### C. The Delayed Discovery Instructions Were Not Prejudicial

#### 1. Haynes Offered No Evidence Of A Single Fact He "Discovered" *After* February 12, 2014

Even if Haynes could somehow clear the overwhelming hurdle of his failure to offer any evidence of administrative exhaustion, he offered nothing from which a jury could infer that Haynes discovered the fact of unlawful conduct *more than* 12 months after his employment ended. The only evidence

59

at trial on this issue came from this exchange during Haynes' direct examination:

> Q: When did you first suspect age was a factor in your termination?
>
> A: ***About 11 to 12 months after I was terminated.***
>
> Q: Is that when you came to my office?
>
> A: Yes, it is.

15-ER-3365:9-13 (emphasis added). This testimony does not indicate Haynes learned anything more than 12 months after he was terminated, and Haynes cites nothing on appeal. Thus, the instruction could not have had any prejudicial influence on the jury's verdict. Nor does Haynes identify *what* he learned "11 to 12 months" after his termination. Thus, there was no evidence from which the jury could infer timely exhaustion no matter what the jury instruction said. There is no basis for reversal.

### 2. The Jury Found That Age Was Not A Substantial Factor in Haynes' Termination

The jury found that Haynes had not met his burden of proving that his age was a substantial motivating factor in his termination. 5-ER-955. Thus, judgment was proper for Home Depot on Haynes' age claims regardless of the jury's views on the matter of timeliness, and regardless of the district court's delayed discovery instructions.

## IV.   THE VERDICT IS CONSISTENT

Haynes forfeited any challenge the jury verdict on inconsistency grounds because he did not raise the issue before the jurors were discharged, and he never raised any such argument with the district court. *See* 16-ER-3640-44. *Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995); *Williams v. Gaye*, 895 F.3d 1106, 1130 (9th Cir. 2018) (appellants waived right to object to jury's verdicts because they "did not object to the jury's verdicts prior to discharge" or "object during a colloquy with the district court after the jury was discharged"); *Flores v. City of Westminster*, 873 F.3d 739, 757 (9th Cir. 2017) (affirming district court's denial of appellant's motion for a new trial for alleged inconsistencies with in a verdict because the appellant failed to object before the jury was discharged).

In addition, even if the argument was not forfeited, the verdict raises no inconsistency. An appellate court reviewing a special jury verdict *must* uphold the verdict unless it is "impossible under a fair reading to harmonize the answers." *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (quotations omitted). The appellant "bear[s] a high burden to establish an irreconcilable inconsistency," *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1038 (9th Cir. 2003), because the Constitution's Seventh Amendment guarantees that "no fact tried by a jury shall be otherwise re-examined in any

61

Court of the United States" except "according to the rules of the common law." *Id.* The issue is whether it is *possible to reconcile* the verdicts. *Vaughan v. Ricketts*, 950 F.2d 1464 1471 (9th Cir. 1991).

Here, the verdict is internally consistent. The jury answered "Yes" to the first question, finding Haynes had notice of circumstances sufficient to put a reasonable person on inquiry to seek to learn the facts necessary to bring an age discrimination claim by February 12, 2014, and/or that Haynes learned nothing new after February 12, 2014. 5-ER-955. By answering "No" to the next question, the jury recorded its conclusion that Haynes failed to meet his burden of proving his age was a substantial motiving reason for his termination. *Id.* This answer pertained to the merits of Haynes' FEHA age discrimination and wrongful termination claims, not whether they were timely pursued. There is no inconsistency and not basis for Haynes' argument.

## V.    THE DISTRICT COURT ACTED WELL WITHIN ITS BROAD DISCRETION IN SETTING TRIAL TIME LIMITS

### A.    Haynes Forfeited Any Objection

Haynes did not object to the district court's trial time limits. 8-ER-1613. In *Monotype Corp. PLC*, 43 F.3d at 451, this Court rejected an argument that the trial court's imposition of time limits at trial amounted to an abuse of discretion, noting that "[t]he better place for [the party] to make the time argument, however, was there [in the district court], not here." Haynes did not

voice an issue about the trial time limits until *after* the verdict was returned, in a new trial motion. 3-ER-568-85.

Haynes' argument further fails because Haynes never asked the district court for additional time. In *General Signal Corp.*, this Court rejected such an argument because the appellant never asked for additional time. *See* 66 F.3d at 1508; *see also Monotype Corp. PLC*, 43 F.3d at 451. By neither objecting nor requesting more time, Haynes forfeited any right to object to the trial court's time limits.

### B. District Courts Have Broad Discretion to Impose Reasonable Trial Time Limits

Both sides agree that district courts may impose reasonable time limits on trial. *Gen. Signal*, 66 F.3d at 1508; AOB 49; *see also Navellier v. Sletten*, 262 F.3d 923, 942 (9th Cir. 2001). The twelve hours per side here was a reasonable exercise of the court's discretion, and it treated each side equally. *See Monotype Corp. PLC*, 43 F.3d at 451 (concluding it is reasonable to afford each party equal amounts of time at trial to present claims and defenses).

No case cited by Haynes supports his argument. For example, *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 530 (9th Cir. 1986) involved exclusion of expert testimony, not time limitations. *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir. 1982), does not address discretion to impose trial limit. In *United States v. Reaves*, 636 F. Supp. 1575 (E.D. Ky. 1986), the

63

district court recognized its "power to impose reasonable time limits" and set them in a criminal case. *Id.* at 1580. In *Sec'y of Labor v. DeSisto*, 929 F.2d 789 (1st Cir. 1991), the Court reversed the trial court's arbitrary decision to permit each party to present just one witness. *Id.* at 794, 796. Even then, the First Circuit recognized "the trial court has considerable leeway in molding the trial." *Id.* at 796. In *McKnight v. General Motors Corporation*, 908 F.2d 104, 114-15 (7th Cir. 1900), *superseded by statute on other grounds*, *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007), the trial court limited trial time to 25 hours. Midway through trial, the district court reduced each side's time such that "witnesses *ran* to and from the stand in a desperate effort to complete their testimony before time was called." *Id.* at 115. Notwithstanding, the Seventh Circuit refused to order a new trial. *Id.*[22]

### C. Haynes Squandered the Time He Was Given

Even if Haynes had timely objected to the district court's time limit or requested additional time at trial, he cannot show that harm resulted from anything other than his own mismanagement of this allotted time. As explained by one Court:

> Most significantly, the record reveals that [plaintiff],

---

[22] Haynes' reliance on state court family law cases from Hawaii are not applicable. Those cases involved issues of unrelated state law and heightened constitutional interests.

> not the court, was primarily responsible for its
> inability to present its case within the time limits.
> [Plaintiff] used the vast majority of its time during its
> case in chief, introducing duplicative evidence and
> taking a leisurely approach to its presentation. . . .
>
> [Plaintiff]'s counsel also failed to heed at least five
> specific warnings by the district court to save
> sufficient time for cross-examination during
> [defendant]'s case; he brushed off such admonitions
> by stating that his practice is to ask only five
> questions of a witness on cross-examination.

*Gen. Signal Corp.* 66 F.3d at 1508-09.

Haynes squandered trial time and ignored trial court warnings. For example, Haynes wasted 80 minutes (3-ER-565) examining Korkow about entirely irrelevant matters including her prior employment at Target (12-ER-2625:6-2626:15), toilet paper shortages (12-ER-2637:18-24), interrogatory responses she had never seen and did not verify (12-ER-2641:10-2645:15), and the experiences of other Home Depot employees who played no role in Haynes' termination, including Wheeler (12-ER-2628:10-2629:24, 2689:22-2691:25, and 2707:6-7), Bobby Fisher (12-ER-2705:16-2707:5), and Alex Taylor (12-ER-2647:8-2648:20).

Haynes questioned Collins for 97 minutes (3-ER-565) about a declaration that was not listed on either party's trial exhibit list and that Home Depot never indicated it would introduce. *See* 8-ER-1589-1609; 13-ER-2729-2778, 13-ER-2850. Haynes questioned Voight for 18 minutes on irrelevant

65

issues, only for the jury to hear on cross-examination that she never worked with Haynes and had no personal knowledge of his job performance at all. 13-ER-2871:2-6..

Astorino immediately disclosed that he had no involvement in Haynes' termination. 13-ER-2952:15-17 (Q "[W]ere you involved in the termination of Carl Haynes?" A "No."). Yet, Haynes' counsel continued to question him for 50 minutes, while Astorino continued to respond, again and again, that he knew nothing about Haynes. *See, e.g.*, 13-ER-2954:15-23 ("I wasn't there when Mr. Haynes was in the district, so I'm not aware of any documentation that he may have had."); 2958:7-14 ("I've never met him. I have no idea what he complained about."); 2960:24-239:2 ("Like I said, I wasn't there when Carl Haynes was there. I'm not aware of that."); 2962:22-24 ("Like I said, I wasn't there when Carl Haynes was there."); 2965:3-18 ("I've never heard about him, I've never met him. I've heard nothing."); 2966:9-10 ("Again, I don't know anything about this document. It was five years before I got there."); 2968:15-17 ("I don't know Carl Haynes. I have never met the gentleman. I have no idea."); 2971:2-11 ("I was in a different district. I have no knowledge of any of this or what happened. I don't have any idea.").

After Haynes wasted considerable time, the district court warned Haynes' counsel:

66

> THE COURT: Counsel, we're not trying Ms. Wheeler's case here.
>
> ATTORNEY KEVIN MIRCH: No, I know, but she's a witness.
>
> THE COURT: That's fine, but I think you need to move on. **Your time is ticking**.
>
> ATTORNEY KEVIN MIRCH: **Your Honor, I'm fully aware of my time.**
>
> THE COURT: Okay.
>
> ATTORNEY KEVIN MIRCH: **And I have it out to the tenths of a second where I'm going, but I appreciate you helping me with that.**

13-ER-2970:13-25 (emphasis added). The district court made sure counsel remained aware of their remaining time. 12-ER-2715; 13-ER-2992; 14-ER-3266; 15-ER-3521.

Even though Haynes' never requested additional trial time, the district court *sua sponte* gave him 30 more minutes (taking from Home Depot's remaining time), but he did not even use all of it. 3-ER-565-66; 15-ER-3521. There was no abuse of discretion.

## VI.    THE DISTRICT COURT DID NOT ERR BY SUMMARILY ADJUDICATING THE ISSUE OF PUNITIVE DAMAGES

Trial courts have broad discretion to fashion and modify its scheduling orders. Here, the district court modified its scheduling order to allow Home Depot to renew its summary judgment motion as to punitive damages liability.

Haynes did not object and, on appeal, he offers no authority suggesting the district court lacked authority to rule as it did.. The lack of an objection forfeits any claims of error. *Padgett*, 587 F.3d at 985 n.2. And Haynes' failure to offer reasoned argument or authority in support of his argument is another reason to treat it as forfeited. *See Down v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1007 n.1 (9th Cir. 2000).

On the merits, the district court granted summary adjudication because, under California law, an employer is only subject to punitive damages for the conduct of an employee if the challenged conduct was taken with "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice" by an "officer, director or managing agent of the corporation." Cal. Civ. Code § 3294(b). Haynes claimed Collins and Grooms satisfied this requirement though he did not claim either one was an officer or director of Home Depot. 1-ER-12. This left the "managing agent" category. Home Depot presented undisputed evidence that Collins and Grooms were not managing agents because they did not possess the necessary authority over Home Depot's corporate policies. *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 714 (2009); *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167-68 (2000).

On appeal, Haynes advocates a *per se* rule where the issue of punitive damages liability must go to the jury. Chiefly, he relies on *Spinks v. Equity*

*Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009), but that case expressly rejects such a rule: "the issue [of punitive damage liability] may be resolved on summary judgment, giving due regard to the higher proof standard," which "must be taken into account in ruling on a motion for summary judgment or summary adjudication." *Id.*

Haynes' argument must also be rejected because there can be no punitive damages where, as here, the verdict establishes Home Depot is not liable to Haynes.

## CONCLUSION

The judgment should be affirmed.

Dated: July 14, 2022       Respectfully submitted,

MORGAN LEWIS & BOCKIUS

 /s/ *Barbara J. Miller*
Barbara J. Miller

*Attorneys for Appellee*
Home Depot U.S.A., Inc.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Answering Brief of Appellee Home Depot U.S.A., Inc. has been filed by electronic case filing through the Court's Notice of Docket Activity.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

 /s/ *Barbara J. Miller*
Barbara J. Miller

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32-1(a) because it contains 13,566 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

Undersigned counsel further certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point Times New Roman typeface using Microsoft Word 2010.

  /s/ *Barbara J. Miller*
Barbara J. Miller

## NINTH CIRCUIT RULE 28-2.6 STATEMENT

Pursuant to Ninth Circuit Rule 28-2.6, the following cases arise of the same case in the district court, were previously heard in this Court, raise the same or closely related issues, and involve the same transactions or events:

*Haynes v. Home Depot USA, Inc.*, 800 F. App'x 480 (9th Cir. Jan. 22, 2020)

 /s/ *Barbara J. Miller*  
Barbara J. Miller

# ADDENDUM OF STATUTES AND RULES

## INDEX

United States Code

28 U.S.C. § 2111.................................................................................. A-1

Federal Rules

Fed. R. App. P. 10.............................................................................. A-2

Fed. R. Civ. P. 49.............................................................................. A-2

Fed. R. Evid. 103(a).......................................................................... A-2

Fed. R. Evid. 106 .............................................................................. A-2

Fed. R. Evid. 401 .............................................................................. A-3

Fed. R. Evid. 402 .............................................................................. A-3

Fed. R. Evid. 403 .............................................................................. A-3

Fed. R. Evid. 602 .............................................................................. A-4

Fed. R. Evid. 803 .............................................................................. A-4

Fed. R. Evid. 1006 ............................................................................ A-4

California Codes

Cal. Civ. Code § 3294  ...................................................................... A-5

Cal. Code Civ. Proc. § 335.1  ........................................................... A-6

Cal. Gov't Code § 12960  ................................................................. A-6

## United States Code

## 28 U.S.C. § 2111 – Harmless Error

On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects

which do not affect the substantial rights of the parties.

## **Federal Rules of Appellate Procedure**

### **Fed. R. App. P. 10 – The Record on Appeal**

(a) Composition of the Record on Appeal. The following items constitute the record on appeal:

> (1) the original papers and exhibits filed in the district court;

> (2) the transcript of proceedings, if any; and

> (3) a certified copy of the docket entries prepared by the district clerk.

## **Federal Rules of Civil Procedure**

### **Fed. R. Civ. P. 49 – Special Verdict; General Verdict and Questions**

(a) Special Verdict.

> . . .

> (3) *Issues Not Submitted*. A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

## **Federal Rules of Evidence**

### **Fed. R. Evid. 103(a) – Rulings on Evidence**

(a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:

> (1) if the ruling admits evidence, a party, on the record:

>> (A) timely objects or moves to strike; and

(B) states the specific ground, unless it was apparent from the context; or

(2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

## Fed. R. Evid. 106 – Remainder of or Related Writings or Recorded Statements

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

## Fed. R. Evid. 401 – Test for Relevant Evidence

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

## Fed. R. Evid. 402 – General Admissibility of Relevant Evidence

Relevant evidence is admissible unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

## Fed. R. Evid. 403 – Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

**Fed. R. Evid. 602 – Need for Personal Knowledge**

A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

**Fed. R. Evid. 803(6) – Exceptions to the Rule Against Hearsay--Regardless of Whether the Declarant Is Available as a Witness**

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

   . . .

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances or preparation indicate a lack of untrustworthiness.

**Fed. R. Evid. 1006 – Summaries to Prove Content**

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and

place.  And the court may order the proponent to produce them in court.

## California Government Code

**Cal. Gov't Code § 12960 (2018) – Procedure for prevention and elimination of unlawful employment practices; application of article; complaints; limitations**

(a) This article governs the procedure for the prevention and elimination of practices made unlawful pursuant to Article 1 (commencing with Section 12940) of Chapter 6.

(b) Any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint, in writing, that shall state the name and address of the person, employer, labor organization, or employment agency alleged to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be required by the department.  The director or the director's authorized representative may in like manner, on that person's own motion, make, sign, and file a complaint.

(c) Any employer whose employees, or some of them, refuse or threaten to refuse to cooperate with this part may file with the department a verified complaint asking for assistance by conciliation or other remedial action.

(d) No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred, except that this period may be extended as follows:

    (1) For a period of time not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the allegedly unlawful practice after the expiration of one year from the date of their occurrence.

    (2) For a period of time not to exceed one year following a rebutted presumption of the identify of the person's employer under Section 12928, in order to allow a person allegedly aggrieved by an unlawful practice to make a substitute identification of the actual employer.

    (3) For a period of time, not to exceed one year from the date the person aggrieved by an alleged violation of Section 51.7 of the Civil Code becomes aware of the identity of a person liable for the alleged violation, but in no case

A-5

exceeding three years from the date of the alleged violation if during that period the aggrieved person is unaware of the identity of any person liable for the alleged violation.

(4) For a period of time not to exceed one year from the date that a person allegedly aggrieved by an unlawful practice attains the age of majority.

## California Civil Code

### Cal. Civ. Code § 3294 – Exemplary damages; when allowable; definitions

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge of and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be shown on the part of an officer, director, or managing agent of the corporation.

## California Code of Civil Procedure

### Cal. Code Civ. P. § 335.1 – Two years; actions for assault, battery, or injury to, or for death of, individual caused by wrongful act or neglect

Within two years: An action for assault, battery, or injury to, or for death of, an individual caused by the wrongful act or neglect of another.